# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

HENRY CULLINS,

      Petitioner,        :        Case No. 3:08-cv-026

                            :        District Judge Walter Herbert Rice
   -vs-                                  Chief Magistrate Judge Michael R. Merz

TIMOTHY BRUNSMAN, Warden,

                            :

      Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case under 28 U.S.C. § 2254 is before the Court for decision on the merits. Petitioner was convicted[1] in the Montgomery County Common Pleas Court on one count of felonious assault and one count of aggravated robbery, both with a firearm specification, and sentenced to twelve years confinement. He pleads the following claims for relief:

> **Ground One:** Trial counsel failed to cite *Blakely v. Washington* and similar imports and at the time of the offense, Ohio law mandate[d] that the Petitioner receive the shortest prison term, § 2929.14(b).
>
> **Ground Two:** State failed to show Probable Cause in issuing the arrest warrant voice identification.
>
> **Ground Three:** The trial court overruled motion to suppress voice identification.

(Petition, Doc. No. 2). For relief, Petitioner asks that the Court reduce his "sentence to it's [sic]

---

[1] Petitioner asserts he was convicted by a jury, but the Return of Writ shows he pled no contest.

-1-

lowest term of (3) years, sentence currently violates ex post facto clausse [sic]." *Id*. at 10.

**Ground One**

The Court reads Ground One as claiming that Petitioner was denied effective assistance of counsel at trial when counsel did not cite *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L. Ed. 2d 403 (2004). In that case, handed down June 24, 2004, the United States Supreme Court held that any fact which increases a criminal sentence beyond a legislatively-mandated guideline, even if within a statutory maximum for the offense, must be pled as an element in the indictment and proved to the jury beyond a reasonable doubt.

The governing standard for effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every

> effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct 2464, 91 L. Ed. 2d 144 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

The underlying facts of the offense in this case were set forth on direct appeal by the Montgomery County Court of Appeals as follows:

> [*P2] On June 4, 2005, police responded to a report of a robbery and shooting at the VFW Post on West Third Street in Dayton. When the police arrived, the victims reported that the perpetrators of the crime had fled to a nearby field. When they searched the field, the officers found Cullins.
>
> [*P3] Police Officer Jerry Bell brought Cullins back from the field to the scene of the crime, and Cullins sat in a cruiser within about 15 feet of one of the victims, Jerome Wilson. Another officer was with Wilson. Based on non-verbal communication between the officers, Bell somehow came to believe that Wilson had identified Cullins as one of the perpetrators when, in fact, Wilson had not looked inside the cruiser. Bell then transported Cullins to the Safety Building for interrogation. Wilson was also taken to the Safety Building to be interviewed.

> [*P4] Cullins and Wilson were interviewed in adjoining rooms. At one point, as Officer Bell walked out of the room where he had been interviewing Cullins, Cullins yelled out a question to him. Wilson heard the question and told another officer that the voice he had heard was the voice of one of the perpetrators. However, Wilson was unable to identify Cullins in a photographic array. Another victim, Tyrone Moore, who had been transported to a hospital before Cullins was brought to the crime scene, did identify Cullins as one of the perpetrators from a photo array. The police recovered the car keys of one of the victims from Cullins.
>
> [*P5] On June 13, 2005, Cullins was indicted for felonious assault and aggravated robbery, with a firearm specification on each count. Cullins filed a motion to suppress the identification testimony, arguing that the circumstances were unduly suggestive. He also filed a motion to dismiss the charges against him on the ground that the officers used false information to obtain an arrest warrant. The court overruled both motions.
>
> [*P6] Cullins subsequently pled no contest to the charges. He was found guilty and was sentenced to five years for felonious assault and nine years for aggravated robbery, to be served concurrently, along with three years of actual incarceration on a firearm specification.

(Return of Writ, Doc. No. 6, Exhibit 3, Journal Entry and Opinion, pp. 1-2). Thus the crime in question occurred on June 4, 2005, and Petitioner was indicted nine days later. Petitioner filed a motion to suppress in August 2005 which was not overruled until September 7, 2006. One week later, September 14, 2006, Petitioner pled no contest and was found guilty; Judge Davis imposed sentence on October 10, 2006.

Petitioner was convicted aggravated robbery, a felony of the first degree, and felonious assault, a felony of the second degree, A first degree felony carries a definite sentence of three to ten years; a second degree felony one of two to eight years. Ohio Revised Code § 2929.14(a)(1) and (2). He was also convicted of a firearm specification, which carries a mandatory sentence of three years. which must be served consecutively to any other sentence in the case.

At the time Petitioner committed the offenses, Ohio Revised Code § 2929.14 required that a sentencing judge make certain findings in addition to those made by the jury in order to justify consecutive sentences or sentences of more than the minimum for the particular class. However, after Petitioner committed these offenses, but before he pled no contest, the Ohio Supreme Court held that the enhancement of sentences below the minimum on the basis of facts found by the judge, rather than being found by a jury or admitted by the defendant, violated the Sixth and Fourteenth Amendments. It did so by applying *Blakely*, supra, to Ohio Revised Code § 2929.14. *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E. 2d 470 (2006). Having held the Ohio sentencing scheme unconstitutional, the Ohio Supreme Court corrected the problem by severing the requirement for additional judicial fact finding and allowing Ohio trial judges discretion to sentence anywhere within the range adopted by the legislature without making additional findings. At the time Petitioner was sentenced, *Foster* was firmly in place and governed his sentence.

This history is necessary to understand why Petitioner's first ground for relief is without merit If his trial attorney had cited *Blakely* to the sentencing judge, the judge would have said "Yes, I understand that *Blakely* makes part of Ohio Revised Code § 2929.14 unconstitutional and therefore I am not going to make the additional findings." In other words, the Ohio Supreme Court had already determined the applicability of *Blakely* to Ohio sentencing and Judge Davis followed *Foster* in imposing sentence here. Therefore there was no deficiency in trial counsel's performance in failing to cite *Blakely*.

Moreover, as Respondent points out in the Return of Writ, Petitioner never made this argument in the state court system at all and therefore is barred by procedural default from presenting it here.

The first ground for relief should be denied with prejudice.

**Ground Two**

In his second ground for relief, Petitioner asserts that the warrant issued for his arrest was based on a false affidavit. This claim was raised as the first assignment of error on direct appeal to the Montgomery County Court of Appeals. (Return of Writ, Ex. 7.) Petitioner preserved this claim for federal review by raising it as part of his fourth proposition of law on appeal to the Ohio Supreme Court. *Id*. at Ex. 10.

As Respondent points out, Fourth Amendment claims are not cognizable in federal habeas corpus because federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell,* 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976). *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of procedural rule prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may

> take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526. Here the Ohio mechanism was fully available. Petitioner received a hearing and written decision in the trial court and then a thorough consideration of this claim on appeal by the Ohio Court of Appeals. Since Petitioner received a full and fair hearing on his Fourth Amendment claim, he cannot receive habeas corpus relief on that basis, even if this Court thought the state court decision was in error.

The second ground for relief should be dismissed with prejudice for failure to plead a claim upon which habeas corpus relief can be granted.

### Ground Three

In his third ground for relief, Petitioner asserts that his conviction is unconstitutional because the method used to identify him by his voice was im permissibly suggestive. This ground for relief states a claim under the Fourteenth Amendment. An identification procedure violates a defendant's right to due process if it "was so unnecessarily suggestive as to run the risk of irreparable mistaken identification." *Howard v. Bouchard*, 405 F. 3d 459, 469 (6th Cir. 2005). Even if an identification procedure was impermissibly suggestive, the identification is still admissible if it is reliable. *Id.* at 469, 472.

The Montgomery County Court of Appeals held with regard to Cullins' ground three as

follows:

> [*P12] "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE VOICE IDENTIFICATION PROCEDURE WAS IMPERMISSIBLY SUGGESTIVE."
>
> [*P13] Cullins claims that the voice identification by Wilson was impermissibly suggestive because Cullins and Wilson were deliberately placed in adjacent rooms for questioning in a building that was otherwise quiet. Cullins claimed that "Wilson identified the only voice he could hear that night." Cullins also claims that the voice identification was unreliable because Wilson was not able to identify Cullins in a photo array.
>
> [*P14] Cullins' argument implies that the police did something improper to create the circumstances surrounding the voice identification. The evidence, on the other hand, suggests that Cullins spontaneously yelled to an officer as the officer left the interview room, when there was no question before him and when the door to Wilson's room also happened to be open. The rooms themselves were soundproof. In our view, the officers at the station could not have reasonably anticipated this confluence of events, and there is no evidence that they purposely set up this scenario. There is also no evidence that they suspected Wilson would be able to identify Cullins by voice recognition. Based on the officers' mistaken belief at the time that Wilson had already identified Cullins at the scene, there would have been little motive for them to set up a "coincidental" voice identification.

(Return of Writ, Doc. No. 6, Exhibit 9, state Court of Appeals opinion, ¶¶12-14.)

When the state courts have considered and decided a constitutional issue later presented in federal habeas corpus, the federal court may not overturn the state court decision unless it was contrary to or an objectively unreasonable application of clearly established federal law as decided by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Here the state court of appeals decision is a completely reasonable application of federal law. There is simply no evidence that the police set

up a suggestive identification situation at all – they did not present Petitioner to the victim and ask him if this was the offender (a show up) nor did they present a suggestive line-up or photo array. In fact, there is no reason to suspect that the police expected what amounted to a spontaneous voice identification by the victim.

Therefore the third ground for relief should be denied.

## Conclusion

Based on the foregoing analysis, the Petition herein should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and any request to appeal *in forma pauperis*.

October 22, 2008.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make

objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).